## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES ex rel. MARK ALAN STOVER, <br><br> Plaintiff/Relator, <br><br> v. <br><br> CERATIZIT USA, INC., <br><br> Defendant | FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) <br><br> Civil Action No. |

## <u>COMPLAINT</u>

1.     Plaintiff Mark Alan Stover ("Stover" or "Relator"), acting as a relator pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729 *et seq*., brings this action on behalf of the United States to recover damages and civil penalties, and to obtain injunctive relief, against defendant Ceratizit USA, Inc. ("Ceratizit USA" of "Defendant").

## I.     INTRODUCTION

2.     Relator brings this *qui tam* case to disclose, and to remedy, Ceratizit USA's evasion of customs duties owed in connection with importation into the United States of tungsten carbide rods, and also its failure to comply with country-of-origin marking requirements applicable to those imported goods. Those products were, and continue to be, subject both to standard duty rates and also to

so-called "Section 301" tariffs that were put into place starting in September of 2018 and continuing through the present.

3.    Ceratizit USA has violated the False Claims Act in three ways: first, by transshipping the rods through Taiwan, and claiming to U.S. Customs and Border Protections ("CBP") that the rods are of Taiwanese origin, to avoid payment of duties owed under the Section 301 tariffs; second, by importing the rods under incorrect Harmonized Tariff Schedule of the United States ("HTS") codes, thereby avoiding standard duties; and third, by failing to mark the imported rods, or the packaging in which the rods are sold, with required country-of-origin labeling, thereby incurring liability for "marking duties."

4.    Knowing underpayment of customs duties is actionable under the "reverse false claims" provision of the False Claims Act. 31 U.S.C. § 3729(a)(1)(G).

5.    Accordingly, Ceratizit USA has violated the False Claims Act. Under the False Claims Act, the damages incurred by the United States are automatically trebled. In addition, the False Claims Act provides for statutory penalties, which should be imposed in addition to the trebled damages.

## II.    PARTIES

6.    Relator is a long-time participant in the metalworking products industry who is intimately familiar with Chinese production and sale of sintered

tungsten carbide products, including the rods at issue in this case.

7.      Defendant is a limited liability company formed under the laws of the State of South Carolina.  Until sometime in 2022, Defendant's headquarters was in Warren, Michigan.  Defendant recently announced that its headquarters had moved to Schaumberg, Illinois. Defendant is part of a group of affiliated companies that goes under the name Ceratizit Group, headquartered in Luxembourg.

## III.   JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. §§ 3730(b), 3732.

9.      This Court has general and specific personal jurisdiction over Defendant because Defendant has maintained an office in this District, has conducted business in this district, and this action arises, at least in part, out of business transacted in this District.

10.     Venue is proper in this district pursuant to 28 U.S.C § 1391 and 31 U.S.C § 3732 because Defendant has maintained an office in this District, has conducted business in this district, and certain of the false and fraudulent acts complained of herein took place in this District.

## IV.   LEGAL FRAMEWORK

11.     Paragraphs 1 through 10 are incorporated herein by reference.

12.     All importers, including Defendant, must file with the government

certain forms and data whenever they import foreign manufactured goods into the United States. *See* 19 C.F.R. §§ 142.3. In so doing, importers are required to disclose the country of origin of the imported goods, HTS code for the goods, a description of the goods, and the value or approximate value of the goods.

13.     HTS codes are used to determine the rate of duty for merchandise.

14.     Import duties, which are obligations to pay or transmit money to the United States, are calculated based on the value of goods imported and the duty rates determined by those goods' HTS codes.

15.     The products at issue in this case, tungsten carbide rods, are classified under the HTS Code 8209.00.00.  This was confirmed by a Customs ruling in 2002.  *See* Customs Ruling HQ965414 (July 30, 2002); *see also* Revocation of Ruling Letter & Treatment Relating to the Tariff Classification of Tungsten Carbide Rods, 39 Cust. B. & Dec. 26 (2005).  This HTS classification is well-understood within the industry.

## V.     FACTS

16.     Paragraphs 1 through 15 are incorporated by reference.

17.     This case concerns three schemes related to Defendant's importation of tungsten carbide rods: a transshipping scheme, a misclassification scheme, and a failure-to-mark scheme.

**A.      The Transshipping Scheme**

18.      Pursuant to Title III of the Trade Act of 1974 (Sections 301 through 310, 19 U.S.C. §§2411-2420), titled "Relief from Unfair Trade Practices," and often collectively referred to as "Section 301," the United States has imposed tariffs on certain products manufactured in China.  Of particular relevance here, as of September 24, 2018, an additional 10% tariff was imposed on products manufactured in China and classified under the HTS codes starting with 8209.00.00.  *See* Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 F.R. 47,974, 47,997 (September 21, 2018).  Those additional Section 301 tariff increased to 25% as of May 10, 2019.  *See* Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 F.R. 20,459 (May 9, 2019).  A subsequent notice made clear that the additional 25% tariff would only apply to products entered into the United States after June 15, 2019. *See* Additional Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 F.R. 26,930 (June 10, 2019).  By action of the U.S. Trade Representative on October 28, 2019, products classified under HTS 8209.00.0030 (the products as issue here) were excluded from the Section 301 tariffs through

5

August 7, 2020, at which time the exclusion expired. *See* 84 F.R. 57,803 (Oct. 28,2019).

19.    To evade these tariffs, and in violation of customs laws and regulations and the False Claims Act, Defendant has transshipped Chinese-made tungsten carbide rods through a third country, Taiwan, and then imported those Chinese-made rods into the United States while falsely representing to the United States government that the rods were made in Taiwan.

20.    The manufacturer of the products at issue is CB-Ceratizit, a Luxembourg corporation, affiliated with Ceratizit USA.  CB-Ceratizit is a 50/50 joint venture of Ceratizit Group and CB Carbide, which was previously known as Chuen Bao Carbide.  CB Carbide was originally Taiwan based, but between 1999 and 2003, it transferred the vast majority of its manufacturing from Taiwan to China.

21.    According to the import documents submitted by Ceratizit USA, from 2007 through October 5, 2018, every time it imported tungsten carbide rods manufactured by CB-Ceratizit into the United States by boat, the shipment originated in Xiamen, China. But starting with a sea shipment that arrived in the United States on October 24, 2018—only one month after the Section 301 tariffs were imposed— and continuing to the present, almost all such shipments have originated in Taiwan instead of China.

22.     The rods manufactured by CB-Ceratizit and imported into the United States since October, 2018, are not actually manufactured in Taiwan.  CB-Ceratizit does not have sufficient manufacturing capabilities in Taiwan to make the volume of rods that have been imported into the United States.  In addition, Taiwan does not possess sufficient raw materials to produce that volume of rods, nor have the necessary raw materials been imported into Taiwan.

23.     Moreover, representatives of Ceratizit USA or its affiliates have admitted, in conversations with customers, that the rods are not actually manufactured in Taiwan.

24.     Examples of instances when Ceratizit USA imported tungsten carbide rods into the United States without paying duties owed under the Section 301 tariffs, and with false representations as to country-of-origin, include the following:

  a.  A November 27, 2018 shipment of 12,718 kilograms of tungsten carbide rods transshipped through Kaohsiung, Taiwan and imported into the United States through the Port of Los Angeles;

  b.  A May 28, 2019 shipment of 3,787 kilograms of tungsten carbide rods transshipped through Kaohsiung, Taiwan and imported into the United States through the Illinois

7

International Port District in Chicago;

   c.  An August 9, 2020 shipment of 2,604 kilograms of tungsten carbide rods transshipped through Keelung, Taiwan and imported into the United States through the Port of Oakland;

   d.  A July 1, 2021 shipment of 8,729 kilograms of tungsten carbide rods transshipped through Kaohsiung, Taiwan and imported into the United States through the Port of Tacoma;

   e.  An April 30, 2022 shipment of 4,456 kilograms of tungsten carbide rods transshipped through Kaohsiung, Taiwan and imported into the United States through New York.

25.    Each time that it falsely represented the country of origin of the tungsten carbide rods that it imported into the United States, Defendant made a false record or statement material to an obligation to pay or transmit money or property to the Government.

26.    The use of these false country of origin designations concealed or improperly avoided or decreased obligations to pay or transmit money or property to the Government.

27.    In so doing, Defendant acted with "knowledge," as that term is defined in the False Claims Act.  31 U.S.C. § 3729(b)(1)(B).

**B.     The Misclassification Scheme**

28.     Since at least 2017, and perhaps even earlier, Defendant has imported

tungsten carbide rods not under their proper HTS code starting with 8209.00, but

rather under HTS codes starting with 8311.90.

29.     That latter code is the HTS code for tungsten carbide EDM electrodes,

or tungsten electrodes for TIG welding, which are entirely different products than

the tungsten carbide rods that Defendant actually imports. Unlike products

imported under the code 8209.00.00, which carry a substantial duty, items

imported under code 8311.90 are duty free.

30.     By way of example only, two such shipments include:

  a.  A November 8, 2020 shipment from CB Ceratizit in Taiwan to

      Ceratizit Sacramento of 227 kilograms of tungsten carbide rods

      falsely identified with HTS code 8311.90.000, when the true

      code was 8209.00.00.

  b.  A February 1, 2022 shipment from CB Ceratizit in Taiwan to

      Ceratizit USA in Warren, Michigan of 3,300 kilograms of

      tungsten carbide rods falsely identified with HTS code

      8311.90.00, when the true code was 8209.00.00.

31.     Each time that Defendant imported tungsten carbide rods into the

United States, while providing the incorrect HTS code in the import documentation

it submitted to the United States government, Defendant made a false record or statement material to an obligation to pay or transmit money or property to the Government.

32.    The use of those incorrect HTS codes concealed or improperly avoided or decreased obligations to pay or transmit money or property to the Government.

33.    In so doing, Defendant acted with "knowledge," as that term is defined in the False Claims Act.

**C.    The False Marking Scheme**

34.    The Tariff Act of 1930, 19 U.S.C. § 1304(a), provides, with some very limited exceptions not applicable here, that:

> every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article.

35.    Articles that enter the United States without proper country-of-origin marking, and that subsequently enter into the stream of commerce, are subject to "a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation." *Id*. at § 1304(i);

36.    Here, Ceratizit USA is importing tungsten carbide rods, manufactured in China, and other products manufactured in various foreign countries, without

any country-of-origin markings either on the products themselves or on the

containers in which the products are sold.

37.     Plaintiff is aware of specific examples of Chinese-made products

imported by Defendant into the United States without any country-of-origin

markings. By way of example only:

> a.  On September 9, 2019, Plaintiff purchased from Defendant, via
>     a third party, three packages of ½ inch diameter by 3-inch-long
>     CB-Ceratizit tungsten carbide rods. These rods were
>     manufactured by CB-Ceratizit outside the United States. None
>     of the packaging and nothing on the products themselves
>     indicated the products' country of origin.
>
> b.  On September 3, 2020, Plaintiff purchased from Defendant, via
>     a third party, a package of 1 inch diameter by 9-inch-long CB-
>     Ceratizit tungsten carbide rods. This rod was manufactured by
>     CB-Ceratizit outside the United States. None of the packaging
>     and nothing on the product itself indicated the product's
>     country of origin.

38.     Defendant has not informed the United States government of its

importation of foreign-manufactured products into the United States without the

required country-of-origin, and has not paid marking duties.

39.    By failing to mark imported products with the required country-of-origin marks, failing to disclose this to the United States government, and evading the payment of marking duties, Defendant has violated the False Claims Act. *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 254 (3d Cir. 2016).

40.    In so doing, Defendant acted with "knowledge," as that term is defined in the False Claims Act.

**COUNT ONE**
**Federal False Claims Act**
**31 U.S.C. § 3729(a)(1)(G)**
**Transshipping**

41.    Paragraphs 1 through 40 are incorporated by reference herein.

42.    A company violates the False Claims Act when it "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). This is the so-called "reverse false claims" provision of the Act.

43.    A knowing failure to pay customs duties violates this provision.

44.    Defendant knowingly made, used, or caused to be made or used, false records or statements on entry documentation, including false statements that the products' country-of-origin was Taiwan, when in fact it was China.

12

45.    The false records or statements were material to Defendant's obligation to pay or transmit customs duties to the Government, because goods imported from China are subject to additional tariffs that goods from Taiwan are not subject to.

46.    By failing to pay the amount of customs duties that it was legally required to pay, Defendant also knowingly and improperly avoided or decreased its obligation to pay or transmit money to the Government.

47.    As a result of these actions and omissions, Defendant caused damages to the United States equal to the amount of customs duties that Defendant failed to pay, in an exact amount to be determined at trial.

**COUNT TWO**
**Federal False Claims Act**
**31 U.S.C. § 3729(a)(1)(G)**
**Misclassification**

48.    Paragraphs 1 through 40 are incorporated by reference herein.

49.    Defendant knowingly made, used or caused to be made or used, false records and statements material to an obligation to pay or transmit money or property to the United States Government.

50.    Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the United States Government, including entry documentation that included false HTS codes that did not correspond to the imported products' actual

HTS codes.

51.     The false records or statements were material to Defendant's

obligation to pay or transmit customs duties to the Government because HTS codes

are used to determine the duty owed on imported products. The false HTS codes

that Defendant indicated on entry documentation carry a lower duty rate than the

products' true HTS codes.

52.     By failing to pay the amount of customs duties that it was legally

required to pay, Defendant also knowingly and improperly avoided or decreased its

obligation to pay or transmit money to the Government.

53.     As a result of these actions and omissions, Defendant caused damages

to the United States equal to the amount of customs duties that Defendant failed to

pay, in an exact amount to be determined at trial.

**COUNT THREE**
**Federal False Claims Act**
**31 U.S.C. § 3729(a)(1)(G)**
**False Marking**

54.     Paragraphs 1 through 40 are incorporated by reference herein.

55.     Defendant knowingly made, used or caused to be made or used, false

records and statements material to an obligation to pay or transmit money or

property to the United States Government.

56.     These false records and statements included, but may not be limited

to, entry documents and representations included therein filed by Defendant or its

14

agents on or about the time of importation of tungsten carbide rods and other non-carbide rod products, the posting of duties owed, and the unmarked products themselves.

57.     Defendant knowingly concealed an obligation to pay or transmit money or property to the United States Government by failing to pay the marking duties it owed, submitting false records or statements in connection with the same, and otherwise obscuring the country of origin of its tungsten carbide rods and other products.

58.     Defendant knowingly and improperly avoided or decreased an obligation to transmit money or property to the United States Government by failing to pay the marking duties it owed and submitting false records or statements in connection with the same.

59.     As a result of Defendant's conduct, including these false records or statements, the United States Government suffered damages, including the amount of marking duties that Defendant owes but has not paid, in an exact amount to be determined at trial.

WHEREFORE, Plaintiff prays for the following relief:

    a.     An injunction requiring Defendant to cease and desist from further violations of the False Claims Act;

    b.     A judgment for damages against Defendant in an amount to be

determined at trial equal to three times the amount of damages suffered by the United States as a result of Defendant's violations of the False Claims Act;

c.      Civil monetary penalties for each false record or statement made, used, or caused to be made or used by Defendant that was material to any obligation to pay or transmit money or property to the United States Government and/or for each instance of Defendant knowingly concealing or knowingly and improperly avoiding or decreasing any obligation to pay or transmit money or property to the United States Government;

d.      An award to Plaintiff pursuant to 31 U.S.C. § 3730(d);

e.      An award to Plaintiff of reasonable attorneys' fees, costs and expenses; and

f.      Such other and further relief as the Court deems just and equitable.

## VI.   JURY TRIAL DEMAND

Plaintiff/relator hereby demands a jury trial on all issues so triable.

Respectfully submitted,

*Paulsen K. Vandevert*

Paulsen K. Vandevert  P52438
Vandevert Trade Law PLC
401 Tannahill Street
Dearborn, MI 48124
(313) 737-3675
paul@vandeverttradelaw.com

Jonathan K. Tycko
Tycko & Zavareei LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 973-0901
jtycko@tzlegal.com